## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

| | | |
|---|---|---|
| GARY W. BOWLES | ) | |
| | ) | Case No. 4:04CV00040 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |
| | ) | |

Before me is the Report and Recommendation of the United States Magistrate Judge

recommending reversing the Commissioner's final decision denying the Plaintiff's claim for benefits.

The Defendant filed objections to the Report and Recommendation.  I reviewed Judge Crigler's Report

and Recommendation, the Defendant's objections, and relevant portions of the record.  The matter is

now ripe for decision.  For the reasons stated below,  I **REJECT** the Magistrate's recommendation

and **SUSTAIN** the Defendant's objections.  The Commissioner's final decision denying the Plaintiff's

claim for benefits is **ADOPTED.**

### STATEMENT OF FACTS

Plaintiff Gary W. Bowles ("Plaintiff") is 44 years old and has an eleventh grade education with

past work experience as a construction superintendent.  On November 13, 2001, Plaintiff fell from a

truck onto his back and fractured three thoracic verterbrae, and since then has not returned to work.

1

Plaintiff has complained of pain in his low back radiating to his buttocks but the initial focus was on the compression fractures. His thoracic injuries healed without complication, but his lumbar pain did not resolve. He complained of persistent pain in his low back that radiated to the right lower extremity and was aggravated by sitting and standing. Over the ensuing year he was treated conservatively with physical therapy, localized injections and narcotic pain medications, but reported only very minimal relief of pain. On neurosurgical evaluation by Henry Elsner, M.D., in September 2002, ten months post-injury, he had marked paravertebral spasm and tenderness but no reflex, motor, or sensory abnormalities in the lower extremities, and an MRI scan was "fairly normal," showing only mild generalized lumbar degenerative disc disease and no evidence of disc herniation or other anatomic explanation for his ongoing symptomatology. Since he did not have any underlying surgical condition, he continued to be treated symptomatically and was tried on a number of pain medications with only minimal relief of pain before being referred to Dr. Mark Phillips, a pain management specialist.

Records from Dr. Phillips show that on initial examination Plaintiff's gait was mildly antalgic, but he was otherwise neurologically intact, with symptoms somewhat out of proportion to the clinical findings. Despite Plaintiff's complaints of throbbing, stabbing, shooting pain at a level of "8" on a scale of 1 to 10, straight leg raising could be performed to 70 degrees and he had normal reflexes, strength and sensation in the lower extremities. In December 2002 Plaintiff was started on the pain medication Avinza but said it was of no benefit. In March 2003 he had a lumbar facet injection but reported that it did not relieve his pain and in fact made it worse, so Dr. Phillips saw no point in pursuing that course of treatment. On followup on April 1, 2003, Plaintiff said that Avinza was working well for him, and Dr. Phillips prescribed a spinal cord stimulator and continued him on Avinza but told him "I was perplexed

that he felt the Avinza helped [because] when I saw him prior to the facet joint injection he stated it was of no benefit." By April 30, 2003, Plaintiff said that the combination of Avinza, back brace and stimulator had significantly reduced his pain and allowed him to walk better, and Dr. Phillips encouraged him to walk since he was showing so much improvement.[1]

By July 2003 Plaintiff's complaints had become chronic and Dr. Phillips referred him to Martha Simpson, Ph.D, for pain management. Dr. Simpson reported that the claimant was highly motivated and receptive to learning good coping skills. He was still using the stimulator very religiously at the time and it was helping his pain, but he was depressed and grieving over his father's recent death. Dr. Phillips started Plaintiff on Lexapro for his depression and Xanax for anxiety. When last seen by Dr. Simpson in October 2003, Plaintiff's grief had lessened and he was adjusting well and using pain coping skills daily with good results. A new MRI scan still showed only mild, generalized lumbar disc disease and no disc herniation or spinal cord stenosis. Following up with Dr. Phillips in October 2003, Plaintiff said he was getting a "big benefit" from the stimulator and only used his back brace intermittently. He was tolerating his medications with minimal side-effects but took Lortab during the day for more severe pain. Plaintiff said he was able to do his own laundry and some household chores but was limited in walking long distances because of pain. Clinical findings remained unchanged. Plaintiff continued to

---

[1]In a May 2003 assessment of the claimant's ability to do work-related activities, Dr. Phillips indicated that he can continuously sit for a maximum of 15 minutes in an eight-hour day, or 4 hours total if he can alternate positions, and stand and walk for 15 minutes maximum or a total of two hours before alternating positions. Additionally, in order "to relieve pain and fatigue arising from a documented medical impairment," Plaintiff must be allowed to rest at approximately two hour intervals in addition to a usual morning and afternoon break, and must be permitted to sit, lie down or recline in a supine position every 30 minutes, for a total of five hours in an eight hour day.

3

report better tolerated levels of pain and better ability to cope with pain on a combination of Xanax, Lexapro, back brace and spinal stimulator. A functional capacity evaluation showed that he could lift 5 pounds and occasionally sit, stand and walk and could therefore perform less than the minimum requirements for a sedentary job. Dr. Phillips agreed with that finding and concluded that the Plaintiff had reached maximum medical improvement and "in my opinion he is disabled."

However, in December 2003, Dr. Phillips noted that a worker's compensation investigator had provided him with a surveillance videotape showing the Plaintiff squatting, bending forward, and laterally flexing while clipping his dog's hair, demonstrating "much broader ranges of motion than he demonstrated to me today." Dr. Phillips showed Plaintiff the pictures and questioned "how he could do the activities he did [on the videotape] and still be at the functional level that he claims." He assured the Plaintiff that he would keep an open mind but was nevertheless "concerned that the inconsistencies of his exam with the findings on file certainly raise doubts as to the validity of his historical descriptions and his efforts with us today."

## ANALYSIS

### I.    Standard of Review

Congress limits judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*,

4

270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The

Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a

preponderance.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

## II.      The Social Security Act

It is well established that disability determinations are governed by the provisions of 20 C.F.R.

§ 404.1520 (2003).  Under the five-step evaluation procedure, the ALJ must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a

severe impairment; (3) if so, whether that impairments meets or equals the medical criteria of Appendix

1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether

the impairment prevents him from performing his past relevant work; and (5) if so, whether other work

exists in significant numbers in the national economy that accommodate his residual functional capacity

and vocational factors.  *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981).  The burden of

proof remains with the claimant through the fourth step; however, if the claimant successfully reaches

step five, then the burden shifts to the Commissioner to show that other jobs exist in the national

economy that the claimant can perform.  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  The

Commissioner may meet this burden by relying on the Grids.

## III.     The Magistrate's Report and Recommendation

The main question before me is whether substantial evidence supports the ALJ's decision that

Plaintiff is not disabled under the Social Security Act.  In evaluating the Plaintiff's disability claim, the

5

ALJ followed the sequential inquiry and found that the Plaintiff was not disabled at the last step of the inquiry because the evidence supported a finding that Plaintiff possessed the exertional capacity to perform the demands of the full range of sedentary work. But the Magistrate asserts that the ALJ erred in concluding that Plaintiff had no non-exertional impairments, thus he failed to carry his burden at the final level of the sequential evaluation by not adducing additional vocational evidence.

The Magistrate asserts that, contrary to the ALJ's findings, the evidence reveals that Plaintiff has suffered nonexertional limitations on his work-related abilities. First, the Magistrate points to the fact that Plaintiff was treated by Guilford Pain Management, P.A., for his pain, and that their records reflect such pain imposed limitations on his ability to function. The Magistrate also states that the "synergist[ic] or combined effects of Plaintiff's pain and medications certainly are sufficient to require vocational testimony . . . particularly since the [ALJ] failed to address whether Plaintiff's reasons for being prescribed anti-depressants. . . constituted a non-exertional limitation."

In determining whether Plaintiff suffered physical impairments, the ALJ considered in detail the records provided by Guilford Pain Management, P.A., ("Guilford") which primarily consist of the clinical findings and recommendations of Dr. Phillips. In his decision, the ALJ acknowledges that Dr. Phillips' findings suggested that Plaintiff's ability to perform work at the sedentary level was limited. However, in formulating Plaintiff's residual functional capacity, the ALJ considered these findings along with video evidence introduced by a worker's compensation investigator showing the claimant squatting, bending forward and laterally flexing; all demonstrating far greater ranges of motion than demonstrated by Plaintiff to Dr. Phillips. Such evidence clearly brought into question the credibility of Plaintiff's complaints of pain to Dr. Phillips, and raised doubts in Dr. Phillips mind as to the validity of

6

Plaintiff's descriptions. Furthermore, there is substantial evidence to support the ALJ's finding that any pain experienced by Plaintiff was well-controlled by his medication regimen, including the statements of his own pain management specialist and Plaintiff's own statements to Dr. Phillips that he was getting relief from the regimen of medication, a back brace and a spinal stimulator. The ALJ noted that although the Plaintiff did state that the medication made him "drowsy," the clinical findings reveal that he tolerated them well with minimal side-effects. (R. 187). The ALJ's report reflects a thorough consideration and review of the Guilford records including adequate consideration of the side-effects of Plaintiff's medication. The ALJ's doubts concerning the validity of Plaintiff's complaints are also sound in light of the video evidence presented. Taken together, I find that the ALJ's determination that no non-exertional limitations existed is clearly supported by substantial evidence.

The Magistrate also asserts that the ALJ erred by not considering whether Plaintiff's reasons for taking anti-depressant medication, and the side-effects of that medication, constituted non-exertional limitations. The record indicates that the Plaintiff was prescribed anti-depressants, however he was never formally diagnosed with depression or any other mental disorder, never sought psychiatric treatment, nor does he allege depression in his testimony or statements in the record. Based on this, the ALJ found that he has no medically determinable "severe" mental impairment. I concur with this determination which is clearly supported by substantial evidence, more accurately a substantial *lack* of evidence supporting any finding that Plaintiff suffered a mental impairment. Thus I find the ALJ's refusal to derive a non-exertional limitation from the mere fact that Plaintiff was taking anti-depressants to be a sound determination supported by substantial evidence.

7

## CONCLUSION

For reasons stated herein,  I **REJECT** the Magistrate's recommendation and **SUSTAIN** the

Defendant's objections.  The Commissioner's final decision denying the Plaintiff's claim for benefits is

**ADOPTED.**

Entered this 15th day of July, 2005.


                                          s/Jackson L. Kiser
                                          Senior United States District Judge

8